UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TIMOTHY J. BLAIS

        Plaintiff,

v.                              **REPORT AND RECOMMENDATION**
                                    **08-CV-01223 (DNH)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.    Introduction

In January 2006, Plaintiff Timothy Blais filed an application for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). At that time, Plaintiff claimed disability based on a neck injury. The Commissioner of Social Security ("Commissioner") denied Plaintiff's application.

Plaintiff, through his attorney, Lawrence D. Hasseler of the Conboy, McKay Law Firm, commenced this action on November 13, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On April 1, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

## II.    Background

The relevant procedural history may be summarized as follows: Plaintiff initially applied for DIB on January 26, 2006, alleging disability beginning on October 1, 2003

1

(R. at 49-51).[1] Plaintiff alleged disability due to a neck injury. The application was denied on March 29, 2006 (R. at 28). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") (R. at 36). A hearing was held in Watertown, New York, on May 14, 2008, before ALJ Barry E. Ryan (R. at 224-48). Plaintiff, represented by counsel, appeared and testified (R. at 227-42). Plaintiff's wife also testified (R. at 242-46). On June 23, 2008, ALJ Ryan issued a decision finding Plaintiff not disabled (R. at 14-25). Plaintiff filed a request for review of that decision (R. at 9). The ALJ's decision became the Commissioner's final decision on September 26, 2008, when the Appeals Council denied Plaintiff's request for review (R. at 5-8).

Plaintiff, through counsel, timely commenced this action on November 13, 2008. (Docket No. 1). The Commissioner interposed an Answer on February 27, 2009. (Docket No. 10). Plaintiff filed a supporting Brief on January 23, 2009. (Docket No. 7). The Commissioner filed a Brief in opposition on May 15, 2009. (Docket No. 12).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further proceedings.

### III.     Discussion

#### A.     Legal Standard and Scope of Review

---

[1] Citations to "R" refer to the Administrative Transcript. (Docket No. 6).
[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the

[Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[3] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the

---

[3]The five-step process is detailed as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

Based on the entire record, the Court recommends remand for failure to fully develop the record.

**B.     Analysis**

**1.  The Commissioner's Decision**

The ALJ made the following findings with regard to factual information as well as the five-step process set forth above: first, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2007 (R. at 17). The ALJ next determined that Plaintiff had not engaged in substantial gainful activity since October 1, 2003, Plaintiff's alleged onset date. Id. At step two, Plaintiff's "[s]tatus post cervical fusion in 2003" was found to be Plaintiff's sole severe impairment. Id. Plaintiff "d[id] not have an impairment or combination of impairments that m[et] or medically equal[ed] one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (R. at 21). At step four, the ALJ determined that Plaintiff "ha[d] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the ability to lift and carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk for at least 2 hours each in an 8-hour workday, sit for 6 hours in an 8-hour workday with unlimited pushing/pulling as

shown for lifting and carrying."[4] Id. Plaintiff was a younger individual, with at least a high school education (R. at 24). Based on Medical Vocational Rules 202.20[5] and 202.21,[6] the ALJ found that there were jobs in the national economy, in significant numbers, that Plaintiff could perform (R. at 25). Ultimately, the ALJ found that Plaintiff was not under a disability at any time through the date of his decision. Id.

### 2. Plaintiff's Claims:

Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor made in accordance with the applicable legal standards. Specifically, Plaintiff argues that a) the ALJ erred in failing to re-contact Dr. Michael Owen for clarification of his opinions; b) the ALJ erred in failing to find Plaintiff met Listing 1.04A; c) the ALJ erred in analyzing Plaintiff's credibility; d) the ALJ improperly discounted Dr. Owen's opinion that Plaintiff was disabled; d) the residual functional capacity ("RFC") was not supported by substantial evidence; and e) the ALJ erred in failing to obtain the testimony of a vocational expert ("VE").

### a) The ALJ Erred in Failing to Re-Contact Dr. Owen

Plaintiff argues that the ALJ erred in failing to re-contact Dr. Michael Owen, Plaintiff's treating neurosurgeon, for clarification of his opinion that Plaintiff was disabled. Plaintiff's Brief, pp. 15-16.

---

[4] The ALJ found Plaintiff capable of performing light work, but also limited to standing and/or walking for two hours (R. at 21). The ability to stand and/or walk for two hours is consistent with the ability to perform sedentary work, not light work. See Social Security Ruling 83-10, 1983 WL 31251, at *5-6 (S.S.A.). Indeed, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Id. at *6. The ALJ's error has no impact on this decision.

[5] Medical-Vocational Guideline Rule 202.20 directs a finding of not disabled when a claimant is capable of performing light work, a younger individual, a high school graduate or more, and has unskilled or no past work. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 202.20.

[6] Medical-Vocational Guideline Rule 202.21 directs a finding of not disabled when a claimant is capable of performing light work, a younger individual, a high school graduate or more, and has skilled or semiskilled past work, but those skills are not transferable. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 202.21.

Plaintiff began treatment with Dr. Owen on October 29, 2003, for a work related neck injury (R. at 157-58). Dr. Owen performed spinal surgery on May 27, 2004 (R. at 140), and continued to treat Plaintiff through October 11, 2005 (R. at 146). Dr. Owen did not testify and he failed to submit an opinion of Plaintiff's ability to work despite Plaintiff's impairments. However, he did complete several forms, apparently for Workers Compensation purposes, indicating that Plaintiff had a total disability (R. at 147-48, 150, 152-54, 156, 159).

The ALJ has an affirmative duty to develop the record. Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982). This duty exists regardless of whether Plaintiff has counsel or is continuing *pro se*. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). If the evidence received is not adequate to determine whether an individual is disabled, additional information must be gathered by first either contacting or re-contacting Plaintiff's treating physician. 20 C.F.R. § 404.1512(e)(1). The Court agrees that the ALJ erred in failing to contact Dr. Owen to obtain a more specific opinion, apart from his written opinions in the Workers Compensation context.

Dr. Owen's finding of total disability is vague, and therefore unhelpful, in determining Plaintiff's ability to function despite his impairments. Dr. Owen was the surgeon treating Plaintiff's neck impairment, and the sole treating physician to supply medical records. Because Dr. Owen failed to submit an opinion of Plaintiff's limitations, the only assessments were supplied by Social Security Administration ("SSA") consultative sources. Therefore, given that Dr. Owen was the specialist treating Plaintiff's neck impairment, it was critical that the ALJ contact Dr. Owen to request an opinion of Plaintiff's ability to function despite his impairments. See 20 C.F.R. §

7

404.1513(b)(6) (a "medical report" should include "[a] statement about what you can still do despite your impairment(s)"); see also Dickson v. Astrue, 2008 WL 4287389, at *13 (N.D.N.Y. Sept. 17, 2008) (where none of plaintiff's treating physicians had offered an opinion of plaintiff's functional abilities, "the ALJ had an affirmative duty, even if plaintiff was represented by counsel, to develop the medical record and request that plaintiff's treating physicians assess plaintiff's functional capacity"); Lawton v. Astrue, 2009 WL 2867905, at *16 (N.D.N.Y. Sept. 2, 2009) (internal citations removed) ("The ALJ's failure to re-contact [plaintiff's treating physician] in an attempt to obtain an RFC or medical source statement constitutes a breach of the ALJ's duty to develop the record, and provides a basis for remand.").

Therefore, the Court recommends remand to allow the ALJ to request an opinion from Dr. Owen regarding Plaintiff's ability to function despite his impairments, as well as to clarify Dr. Owen's opinion that Plaintiff was disabled. Social Security Ruling 96-5p, 1996 WL 374183 at *2 (S.S.A.) (ALJ's are instructed to "make every reasonable effort to re-contact [treating] sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us").

### b) The ALJ Erred in Failing to Provide an Explanation as to Why Plaintiff Did Not Meet Listing 1.04A

Plaintiff argues that the ALJ erred in failing to find he met Listing 1.04A. Plaintiff's Brief, pp. 8-11. Plaintiff further contends that the ALJ erred in finding Plaintiff failed to meet a Listing without first re-contacting Plaintiff's treating neurosurgeon, Dr. Owen, for his opinion regarding Plaintiff's nerve root compression. Plaintiff's Brief, p. 9.

At step three of the sequential evaluation, the ALJ must determine whether a claimant's "impairment(s) . . . meets or equals one of our Listings in appendix 1 of this subpart." 20 C.F.R. § 404.15209(a)(4)(iii). If so, that individual will be found disabled.[7] Id. The ALJ stated that he "ha[d] carefully reviewed Section 1.00[8] of the Listings and determined that [Plaintiff's] impairments d[id] not singly, or in combination, meet or medically equal the requirements of that listing" (R. at 21). Notably absent from the ALJ's finding is any analysis of why Plaintiff failed to meet the requirements of the musculoskeletal listings.

Because the ALJ erred in failing to re-contact Dr. Owen, Plaintiff's treating neck surgeon, the ALJ's findings at step three of the sequential evaluation are necessarily flawed. However, the ALJ's conclusory finding that Plaintiff failed to meet any of the 1.00 Listings is inadequate in light of the evidence supporting Plaintiff's contention that he meets Listing 1.04A.

In this case, the relevant requirements to meet Listing 1.04A, are as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>      A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Pt. 404, Subpt. P, App. 1.

---

[7] To be found disabled at step three of the sequential evaluation, a claimant must also meet the durational requirement. 20 C.F.R. § 404.1520(a)(4)(iii). The durational requirement states that, "[u]nless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.
[8] Section 1.00 contains the musculoskeletal Listings and includes Listing 1.04A. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The first requirement of Listing 1.04A is "[e]vidence of nerve root compression." 20 C.F.R. Pt. 404, Subpt. P, App. 1. Prior to his spinal surgery, an MRI showed "at C6-7 . . . a disc herniation flattening the cord and causing some moderate degree of spinal stenosis that displaces the cervical nerve root" (R. at 166). Post surgery, a January 13, 2006, MRI found "no definite nerve root pathology" but that "[s]ome slight . . . spurring [wa]s noted . . . which d[id] slightly efface the . . . thecal sac" (R. at 160), which implicates nerve root, suggesting that there may have been nerve root compression. Plaintiff's treating nurse practitioner, Mr. Mark Hankins, also repeatedly found radiculopathy (R. at 182-91). Radiculopathy is defined as a "[d]isorder of the spinal nerve roots." Stedmans Medical Dictionary (27th ed. 2000), *available at* STEDMANS 347610 (Westlaw) (hereinafter Stedmans). Thus, Mr. Hankins findings of radiculopathy further suggest nerve root compression. <u>See</u> Nerve Root Disorders (Radiculopathies), *The Merck Manuals Online Medical Library*, http://www.merck.com/mmpe/sec16/ch223/ch223g.html ("Nerve root disorders (radiculopathies) are precipitated by chronic pressure on a root in or adjacent to the spinal column."). ~~These findings indicate nerve root compression~~.

Plaintiff must also establish "neuro-anatomic distribution of pain, [and] limitation of motion of the spine." 20 C.F.R. Pt. 404, Subpt. P, App. 1. Here, the record is replete with Plaintiff's complaints of neck and arm pain as well as consistent findings of neuralgia[9] (R. at 146, 149, 182, 184, 186, 188, 190, 193, 194), The record also contains numerous findings of a limited range of motion in Plaintiff's cervical spine (R. at 169, 183, 185, 187, 189, 191, 194, 205, 208, 223).

---

[9] "Pain of a severe, throbbing, or stabbing character in the course or distribution of a nerve." Stedmans 271340.

The record also contains, at least some, evidence of "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1. For example, on February 23, 2005, Dr. Owen found mild weakness in Plaintiff's left triceps (R. at 149). Dr. Owen again found slightly decreased strength in Plaintiff's left "biceps, triceps, deltoid and grip strength" on October 11, 2005 (R. at 146). Also on that date, Dr. Owen noted that Plaintiff's "reflexes [we]re slightly hypoactive, however, they [we]re symmetrical. [Plaintiff] d[id] have some decreased sensation in patchy areas of his left arm to pin touch." Id. On March 22, 2006, Dr. James Naughten, the SSA consultative examiner, found that Plaintiff's "[l]eft arm strength [wa]s 4/5" (R. at 169). On March 11, 2008, Plaintiff complained of a "sense of numbness in both arms" (R. at 201).

Given the evidence cited above, Plaintiff was owed an explanation of what elements from Listing 1.04A were not met. See Brown ex rel. S.W. v. Astrue, 2008 WL 3200246, at *10 (N.D.N.Y. Aug. 5, 2008) (quoting Giles v. Chater, 1996 WL 116188, at *5 (W.D.N.Y. Jan. 8, 1996)) ("Where the claimant's symptoms as described in the medical evidence appear to match those described in the Listings, the ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings.").

However, there is some evidence in the record does not necessarily support Plaintiff's contention that he meets Listing 1.04A. For example, several scans of Plaintiff's cervical spine, which fail to show nerve root compression, raise a question that requires further investigation by the ALJ in light of the discussion above, suggesting a conflict in the evidence on this condition (R. at 161, 162, 163, 164). Thus, the Court will not, as Plaintiff requests, recommend remand for calculation of benefits.

Plaintiff also argues that "[i]f the ALJ doubted the January 13, 2006 MRI[10] results or desired clarification, the best source for information related to nerve root involvement would have been plaintiff's treating neurosurgeon, Dr. Owen . . . . Despite this, the ALJ erroneously failed to contact Dr. Owen." Plaintiff's Brief, p. 9.

Plaintiff assumes that the ALJ found Plaintiff did not meet Listing 1.04A because of an apparent lack of evidence supporting nerve root compression. The ALJ offered no reasoning for his finding that Plaintiff failed to meet any of the 1.00 Listings. Thus, the Court cannot conclude that an apparent lack of evidence supporting nerve root compression was, in fact, the ALJ's basis for finding Plaintiff did not meet any of the 1.00 Listings. Since the Court has already concluded that the ALJ erred by failing to contact Dr. Owen for clarification and elaboration on Plaintiff's conditions, on remand, the ALJ should also resolve the issue of nerve root compression.

Moreover, on remand if the ALJ once again finds Plaintiff does not meet or medically equal Listing 1.04A, he must engage in a discussion of what requirements from that Listing are not met.

### c) The ALJ Failed to Properly Analyze Plaintiff's Credibility

Plaintiff contends that the ALJ erred in evaluating his credibility. Plaintiff's Brief, pp. 16-18.

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to accept without question the credibility of such subjective evidence.'" Martone v. Apfel,

---

[10] As discussed above, the January 13, 2006, MRI found "no definite nerve root pathology" but that "[s]ome slight . . . spurring [wa]s noted . . . which d[id] slightly efface the . . . thecal sac" (R. at 160).

70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); Social Security Ruling 96-7p, 1996 WL 374186, at *2 (S.S.A.) (hereinafter SSR 96-7p). Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c); Borush, 2008 WL 4186510, at *12. Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[11] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

If the ALJ finds Plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y. 1987)).

Here, the ALJ properly completed the two-step process by "find[ing] that [Plaintiff's] medically determinable impairments could reasonably be expected to

---

[11] The listed factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms; (vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

produce the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not credible to the extent they [we]re inconsistent with the residual functional capacity assessment for the reasons explained below" (R. at 24).

However, despite indicating that a discussion of his reasoning would follow, the ALJ failed to engage in any meaningful analysis of the factors. Instead the ALJ merely stated that "[a]lthough [Plaintiff] did have a fusion, there appear[ed] to be no objective medical evidence to indicate an impairment that would support either the nature and/or extent of the alleged limitations" (R. at 24). Thus, the ALJ erroneously failed to discuss any of the required factors. 20 C.F.R. § 404.1529(c)(3).

Therefore, on remand, the ALJ is instructed to consider the factors in evaluating Plaintiff's credibility.

### d) The ALJ's Evaluation of Dr. Owen's Opinions

Plaintiff argues that the ALJ improperly discounted Dr. Owen's opinions that Plaintiff was disabled. Plaintiff's Brief, pp. 11-16.

The ALJ considered Dr. Owen's Workers' Compensation reports that Plaintiff was disabled and ultimately "deem[ed] these reports to be of little probative value concerning the issue of disability under the Social Security Administration" (R. at 22). The Court can find no error in the ALJ's analysis.

First, opinions as to the ultimately issue of disability are not medical opinions and are reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1).

Second, "[a] decision by any . . . agency about whether you are disabled . . . is based on its rules and is not [the Commissioner's] decision about whether you are

disabled . . . Therefore, a determination made by another agency that you are disabled . . . is not binding on [the Commissioner]." 20 C.F.R. §§ 404.1504, 416.904; see also Rosado v. Shalala, 868 F.Supp. 471, 473 (E.D.N.Y. 1994) (citing Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984) ("Although plaintiff's doctors had checked off that plaintiff was disabled on forms sent to the Workers' Compensation Board, the standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits under the Act. Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the Secretary.").

Nevertheless, the opinions of Dr. Owens, even in the Workers Compensation context, put the ALJ on notice that there were potentially valid opinions relating to the disability of the Plaintiff in the Social Security context. This circumstance clearly should have placed the ALJ on notice that a consultation with Dr. Owen was critical. Because the ALJ failed to develop the record by re-contacting Dr. Owen for clarification of his opinions that Plaintiff was disabled, *it is necessary to remand to allow the ALJ to properly develop the record*.

### e) Both the RFC and the Step Five Analysis are Not Supported by Substantial Evidence

Plaintiff argues that both the RFC and the ALJ reliance on the Medical-Vocational Guidelines instead of obtaining testimony from a VE *were* not supported by substantial evidence and failed to include all Plaintiff's limitations. Plaintiff's Brief, pp. 18-22.

Because the Court has recommended remand for failure to adequately develop the record by re-contacting Dr. Owen for clarification of his opinion, these matters should be reconsidered upon rehearing by the ALJ.

### 3. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Based on the foregoing the Court recommends remand for failure to fully develop the record.

## IV.   Conclusion

For the foregoing reasons, the Court finds that a remand is necessary and warranted. Accordingly, it is respectfully recommended that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

*/s/ Victor E. Bianchini*
Victor E. Bianchini
United States Magistrate Judge

DATED:   Syracuse, New York
         May 13, 2010

## ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

DATED:   Syracuse, New York
May 13, 2010